IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2023

**STATE OF TENNESSEE v. JOHN BUTLER**

**Appeal from the Criminal Court for Shelby County
No. W2100939, W2100942, C2104512, C1204513     Paula L. Skahan, Judge**

———————————————————

**No. W2023-00566-CCA-R3-CD**

———————————————————

The Appellant, John Butler, entered a guilty plea to three counts of aggravated assault and one count of reckless endangerment with a deadly weapon and was placed on judicial diversion with a probationary period of six years.  The State subsequently alleged that the Appellant violated his probation, and, following a hearing, the trial court revoked the Appellant's diversion and entered judgments of conviction imposing an effective sentence of three years to be served in confinement.  In this appeal, the Appellant contends the trial court erred in revoking the Appellant's diversion and in ordering confinement.  Upon our review, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which J. ROSS DYER, J., joined.  ROBERT H. MONTGOMERY, JR., filed a concurring opinion.

Phyllis Aluko, District Public Defender, and Barry W. Kuhn (on appeal) and Nick Cloud (at trial), Assistant District Public Defenders, for the Appellant, John Butler, IV.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Steve Mulroy, District Attorney General; and Theresa McCusker, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

     By criminal information submitted in September 2021, the Appellant was charged with three counts of aggravated assault committed against three different individuals on May 6 and May 7, 2020, and one count of reckless endangerment with a deadly weapon against a group of individuals on May 6, 2020.  The record does not provide an account of

the facts supporting the charges; however, at the revocation hearing, the trial court recalled that the Appellant "had gone into a store, gotten a beer out of the cooler, [and] attempted to steal it." When the store clerk told him he could not have the beer unless he paid for it, the Appellant "got angry, walked out of the store, got a black assault rifle out of the back passenger seat . . . . [w]alked back into the store, pointed the rifle at him and said[,] 'you don't know who I am. I got you.'" Several months later, the Appellant was at an event with his brother, who had gotten drunk, and was asked to leave. The Appellant returned with his brother, brandished guns at the people at the event, and fought with security. On December 1, 2021, the Appellant entered a guilty plea to each criminal information and was granted a judicial diversion with a probationary sentence of six years.

On August 16, 2022, a probation violation report was filed alleging various "technical only" violations committed by the Appellant. The report alleged that on August 2, 2022, the Appellant was referred to Harbor House for drug treatment for twenty-eight days and left the treatment facility without successfully completing treatment in violation of Rule 7. The report further alleged the Appellant failed to report and did not follow-up on the following special conditions ordered by the court: (1) referral to the Community Resource Center to address educational and residential needs by February 15, 2022; (2) referral to the Cognitive Based Intervention Program by June 15, 2022; and (3) referral to the forensic social worker for assessment on aggression, monthly drug screens, court cost installments, $10 per month by court order and restitution, all in violation of Rule 10. The report alleged the Appellant did not report to have a sanction put into place for his failure to attend the above resource programs. Additionally, the Appellant was scheduled for intake with Innovative Counseling for Drug Offender School on June 29, 2022, and he failed to attend the appointment. The appointment was rescheduled to July 13, 2022, and the Appellant again failed to attend. The Appellant also failed to report to have a sanction put into place for this violation. Although the Appellant had repeatedly failed to report or maintain contact with his probation officer, the report did not allege that the Appellant had absconded.

The report listed three prior sanctions imposed by community supervision: (1) on December 9, 2021, the Appellant was sanctioned to see a forensic social worker due to testing positive for cocaine; (2) on June 21, 2022, the Appellant was sanctioned to a curfew for ninety days for failing to report as instructed; and (3) on August 8, 2022, the Appellant was sanctioned to see a forensic social worker for testing positive for cocaine. The affidavit in support of the probation violation report was filed on September 30, 2022, and a warrant for the Appellant was issued the same day.

A revocation hearing was held on March 27, 2023, and D'Angelo Griffin, the Appellant's probation officer, testified consistently with the allegations in the violation report. Griffin testified that the Appellant had been placed on judicial diversion on

December 1, 2021, with an end date of December 1, 2027. Griffin had been supervising the Appellant for the entirety of his probation, and the Appellant had not complied with the terms and conditions of his probation. The Appellant was on diversionary probation *and* the juvenile sex offender registry, for which he was required to abide by the specialized conditions for juvenile sex offenders. Although the circumstances of the juvenile offenses are not entirely clear from the record, the probation violation report notes that the Appellant had been placed on the juvenile sex offender registry and classified as "a violent juvenile sex offender[.]" The Appellant originally met his juvenile sex offender registry requirements by reporting to the police; however, once he was placed on probation in this case, the Appellant's registry requirements under the juvenile sex offender registry were transferred to Griffin.

Griffin explained that the Appellant's failure to report to the probation and parole office had been a consistent problem. The Appellant was required to report to Griffin at the office once a month, and Griffin was also required to conduct monthly home or "in the field" visits. The last time Griffin saw the Appellant was "around August" at the Appellant's uncle's house. Because the Appellant "kept bouncing around from different houses," Griffin changed the Appellant's residential status to homeless and placed him on GPS monitoring on August 9, 2022. When the GPS device did not work correctly, Griffin required the Appellant to report to the office immediately to fix the device and further advised the Appellant that he would be required to report on Tuesdays and Fridays to have the device switched out. The Appellant never reported as directed, and August 9, 2022, was the last day Griffin saw the Appellant. Griffin initiated the paperwork for the instant violation report on August 16, 2022, and the Appellant was arrested on February 23, 2023, five months after the violation of probation warrant was issued.

Griffin testified that participating in monthly, random drug screens was also one of the Appellant's special conditions required from the court. Because the Appellant was not reporting, the monthly drug screens were incomplete. Griffin tried to accommodate the Appellant by conducting the drug screening where the Appellant was located; however, the Appellant was "hard to find" which prevented compliance with this condition. Under Griffin's supervision, the Appellant completed a single drug screen conducted at another person's home and tested positive for THC and cocaine. Based on the positive test, Griffin recommended the Appellant enroll in Harbor House, a twenty-eight-day rehabilitation program. Griffin was subsequently notified by an administrator at Harbor House that the Appellant enrolled in but did not complete the program.

Another court ordered condition required the Appellant to report to various community resource programs. Griffin referred the Appellant to the community resource center for educational and residential needs, and the Appellant was given a certain date to report. Griffin said the Appellant never reported as required. Griffin also referred the

Appellant to a cognitive-based intervention program for behavioral issues, and the Appellant missed the first appointment. When Griffin obtained approval for the Appellant to have a second appointment, the Appellant did not report again. Finally, Griffin said the Appellant had multiple sex offender registry violations for not registering. The Appellant was required "to register quarterly, and he [had] to register every month." The Appellant failed to do so. Asked if the Appellant provided an explanation for his failure to comply, Griffin said, "He would always be nonchalant or it would seem like he would -- maybe was, like, on a drug or he's just always didn't seem like he was present." Griffin opined that the Appellant was on drugs during their interaction, which was later confirmed by the positive drug test.

On cross-examination, Griffin agreed that he noted in the violation report that the above violations were technical-only. He also agreed that this was not "an absconding situation[.]" He explained, however, that "he [had not] done another violation because he had not been supervising [the Appellant] because [the Appellant has] been in warrant status. But technically [the Appellant] *did* abscond." Regardless, Griffin agreed the Appellant had no new arrests to his knowledge, there was no use of methamphetamine involved in this case, and this was not a graduated zero-tolerance violation.

At the close of the proof, defense counsel argued against revoking the Appellant's diversion and probation because the violation report was based solely on technical violations. Relying on State v. Munn, No. W2022-00675-CCA-R3-CD, 2023 WL 2607676, at *3-4 (Tenn. Crim. App. Mar. 23, 2023), defense counsel noted that "the question becomes if [the failure to report for seven months] amounts to absconding . . . which is defined as to go into a clandestine manner out of the jurisdiction of the [c]ourt." Defense counsel maintained that the Appellant did not leave the jurisdiction or attempt to avoid process. Moreover, each time the probation officer searched for the Appellant, including when a warrant was issued, the Appellant was eventually located. Defense counsel stated that failure to report for eight months did not constitute absconding. Finally, citing Tennessee Code Annotated section 40-35-311(e), defense counsel argued that for a technical violation of failure to report the trial court was limited to imposing a penalty of no more than fifteen days confinement because this was the Appellant's first revocation proceeding. As the Appellant had established jail credit for the maximum amount the trial court could impose for the revocation, defense counsel moved the trial court to release the Appellant and place him back on probation.

After further discussion, the trial court terminated the Appellant's diversion and revoked his probation reasoning as follows:

> I think very clearly [the Appellant] has violated the terms and conditions of his diversion, in that he tested positive for drugs; that he was

referred to Harbor House for drug treatment and left the treatment facility without successfully completing the drug treatment; that he was not reporting to his probation officer; that after being originally placed on GPS monitoring, he was taken off that; that he was going -- he did not have -- apparently he was classified as homeless because he was going from place to place. He did not have any kind of permanent address and so he's placed on GPS. He was not using it correctly[,] so he was advised to come into the probation office, which he did not do. So[,] they lost track of him and never came back. If that's not absconding I understand the -- this Court of Criminal Appeals gave a definition in Judge Lammey's case from last week. I didn't bring it back out here with me, but to be absent from reporting since last August and failing to cooperate in any way, shape, or form appears to me to be absconding. Just failing to cooperate at all.

. . . .

I did give [the Appellant] an opportunity to keep both of these cases off of his record, placed him on diversion for six years, was very concerned about [the Appellant's] attitude and attempted to deal with his attitude by placing serious conditions on him. Referral to community resource center to address educational and residential needs since I believe he had a ninth[-]grade education, referral to forensic social worker to assess for aggression. Everything I could think of, monthly drug screens and basically [the Appellant] refused to cooperate with anything, continued to use drugs, was sent to get treatment for this drug issue, went into the program and left without making use of that program, refused to make use of any of the other programs. So basically[,] once he stopped living in his apartment on North Evergreen and went from house to house and his probation officer put him back on the GPS program, he would not cooperate with that GPS monitoring system, refused to go back into his probation office. And essentially in this [c]ourt's opinion, absconded from supervision. I do find he has absconded. I do find -- you want to call this technical because he has not picked up a new case, I am finding that I am – by certainly a preponderance of the evidence he has violated terms and conditions of diversion.

On the same day as the hearing, the trial court entered an order terminating the Appellant's diversion and judgments reflecting imposition of a concurrent term of three years in confinement for the aggravated assault convictions and one year for the reckless endangerment with a deadly weapon conviction. The Appellant filed a timely notice of appeal, and this case is now properly before this court for review.

**ANALYSIS**

The Appellant argues that the trial court erred in revoking the order of diversion and sentencing him to serve time in the penitentiary because of a lack of proof that he had absconded from supervision out of the jurisdiction. The State responds that the trial court made sufficient findings regarding the existence of each specific probation violation that properly supported the Appellant's diversion revocation, and that even if there was error, it was ultimately harmless as the non-technical violation of the Appellant's was supported by the record. For the reasons that follow, we affirm the judgment of the trial court.

Appellate courts review a trial court's revocation of a defendant's probationary sentence under an abuse of discretion standard with a presumption of reasonableness, "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." State v. Dagnan, 641 S.W.3d 751, 759 (Tenn. 2022). "Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008). When determining whether a violation of diversionary probation has occurred, "the trial court should follow the same procedures as those used for ordinary probation revocations." Alder v. State, 108 S.W.3d 263, 266 (Tenn. Crim. App. 2002) (citing State v. Johnson, 15 S.W.3d 515, 519 (Tenn. Crim. App. 1999)). Probation revocation involves "two distinct discretionary decisions, both of which must be reviewed and addressed on appeal." Dagnan, 641 S.W.3d at 753, 757-58. After finding by a preponderance of the evidence that a defendant violated the terms of their probation, a trial court "must determine (1) whether to revoke probation, and (2) the appropriate consequence to impose upon revocation." Id. at 753.

Although not addressed by the parties, the pivotal question in the wake of the passage of the Public Safety Act of 2016 (PSA), and its subsequent amendments, is the law in effect at the time of the Appellant's offenses of conviction. Prior to the enactment of the PSA, trial courts "possess[ed] the power, at any time within the maximum time that was directed and ordered by the court for the suspension, after proceeding as provided in § 40-35-311, to revoke and annul the suspension." Tenn. Code Ann. § 40-35-310(a). The procedure governing a trial court's revocation of a defendant's probation or suspended sentence provided:

> (d) The trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge.

(e)(1) If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial court shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence, and:

> (A) Cause the defendant to commence the execution of the judgment as originally entered, or otherwise, in accordance with §40-35-310; or

> (B) Resentence the defendant for the remainder of the unexpired term to any community[-]based alternative to incarceration authorized by chapter 36 of this title; provided, that the violation of probation and suspension is a technical one and does not involve the commission of a new offense.

Id. § 40-35-311(d), (e)(1)(A)-(B).

The PSA became law on January 1, 2017, and added, as relevant here, Title 40, Chapter 28 which created a graduated system of sanctions for violating a sentence involving release into the community to be imposed under the authority of the Tennessee Department of Probation and Parole. See 2016 Pub. Acts, c. 906. Tennessee Code Annotated section 40-35-311 was not materially altered by the PSA at that time other than to permit the trial court to "consider the results of an offender's validated risk and needs assessment in determining the appropriate disposition of the probation violation charge and requesting an updated validated risk and needs assessment be performed." Effective July 1, 2021, the legislature amended section 40-35-311, see 2021 Pub. Acts, c. 409, §§ 24, 25, which now provides, in pertinent part:

> (d)(1) The trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge. If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310. The court may sentence the defendant to a sentence of probation for the remainder of the unexpired term.

> (2) Notwithstanding subdivision (d)(1), the trial judge shall not revoke a defendant's probation and suspension of sentence for a felony offense, whether temporarily under subdivision (e)(1) or otherwise, based upon one (1) instance of technical violation or violations.

(3) Deleted by 2022 Pub.Acts, c. 981, § 3, eff. July 1, 2022.

(e)(1) If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence for a felony offense by engaging in conduct that is a second or subsequent instance of a technical violation pursuant to subdivision (d)(2), then the trial judge may temporarily revoke the probation and suspension of sentence by an order duly entered upon the minutes of the court, and:

    (A) Impose a term of incarceration not to exceed:

        (i) Fifteen (15) days for a first revocation;

        (ii) Thirty (30) days for a second revocation;

        (iii) Ninety (90) days for a third revocation; or

        (iv) The remainder of the sentence for a fourth or subsequent revocation; or

    (B) Resentence the defendant for the remainder of the unexpired term to a sentence of probation that includes the condition of participating in a community-based alternative to incarceration as provided in § 40-35-104(c)(9); provided, that the violation of probation and suspension is a technical violation and does not involve the commission of a new offense.

. . . .

(g) As used in this section, "technical violation" means an act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation.

As a general rule, a criminal offender must be sentenced pursuant to the statute in effect at the time of the offense. State v. Tolle, 591 S.W.3d 539, 545 (Tenn. 2019); State v. Saint, 284 S.W.3d 340, 347 (Tenn. Crim. App. 2008) ("[T]he sentencing law in effect at the time of the offenses [is] the proper framework for establishing the defendant's sentences."); State v. Mason, No. E2018-01310-CCA-R3-CD, 2019 WL 3992473, at *4

(Tenn. Crim. App. Aug. 23, 2019) (concluding that the defendant had waived any claim regarding the absence of graduated sanctions at his revocation hearing and noting that the statute relied upon was inapplicable because the defendant's offenses were committed before the effective date of the statute). This is because "[w]hen the trial court revokes a defendant's probation, any action it takes thereafter relates back to the sentence previously imposed." Tolle, 591 S.W.3d at 546. The Appellant committed the offenses in this case in 2020, therefore, we apply the law in effect prior to the amendments to Tennessee Code Annotated 40-35-311 subsections (d) and (e), and the creation of subsection (g).

On appeal, as he did before the trial court, the Appellant relies largely upon State v. Munn, No. W2022-00675-CCA-R3-CD, 2023 WL 2607676, at *1 (Tenn. Crim. App. Mar. 23, 2023), as grounds for relief. The probation violation report in Munn alleged that the defendant violated the terms and conditions of his probation on the following grounds: (1) that defendant had "open warrants" issued for various felony offenses; (2) that defendant failed to obtain lawful employment; (3) that defendant failed to report to his probation officer; (4) that defendant failed to provide a current and valid address; and (5) that defendant had contact with one of the victims of the aggravated assault. Munn, 2023 WL 2607676, at *1.

The violation report did not formally allege that the defendant had absconded. The proof at the hearing established that the defendant had reported as instructed until he was arrested in June 2021. The probation officer testified that she had had no contact with the defendant after April 2021, despite attempts to contact him through home visits and by phone in June. During questioning by defense counsel, the prosecutor objected stating that the questioning was "outside the bounds of absconsion." An extensive discussion between the trial court and defense counsel then ensued regarding the scope and propriety of defense counsel's questions. The trial court then limited defense counsel to presenting only proof that the defendant did not abscond. At the close of the inquiry, this court observed that "[b]efore inquiring whether [d]efendant chose to testify or present any evidence, the trial court found simply, 'by a preponderance of the evidence [the defendant] has violated probation.'" Munn, 2023 WL 2607676, at *3.

This court reversed the trial court's revocation of the defendant's sentence in Munn on multiple grounds. First, we concluded that the trial court did not make sufficient findings to support the revocation of the defendant's probation or provide its reasoning for imposing incarceration in accordance with Dagnan. Second, we declined de novo review upon concluding that due process principles required a new hearing because the trial court relied on absconding as a ground to revoke the defendant's probation without notice to the defendant of that allegation in the probation violation warrant. Third, we concluded that the trial court compounded the due process violation by severely limiting defense counsel's cross-examination of the probation officer to matters related only to absconding. Id. In so

holding, we rejected the State's argument that the allegations within the violation report that the defendant "failed to report and failed to provide a current and valid address served as the bases for the violation, which the court 'collectively' labeled 'absconding[.]'"

Significantly, relying on Tennessee Code Annotated section 40-35-311(g), we reasoned that absconding is specifically excluded from technical violations such as failure to report, and that nothing in the probation violation report met the definition of abscond, which is "'[t]o go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid their process. To hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process.'" Munn, 2023 WL 2607676, at *3. Accordingly, Munn stands for the proposition that, under the most recent version of the PSA, which distinguishes between technical and nontechnical violations, the State is required to formally allege in a violation report or warrant that a probationer has absconded before an evidentiary hearing is held in order to provide notice of the claim.

While we agree with the essence of Munn, we conclude that it is distinguishable. As previously discussed, the law in effect at the time of a defendant's offense of conviction controls. Although an offense date was not included in Munn, our decision in that case rested, in part, on application of Tennessee Code Annotated section 40-35-311(g). Under Tennessee Code Annotated section 40-35-311(g), notice of being formally charged with absconding, a non-technical revocable violation, as opposed to failure to report, a technical nonrevocable violation, is particularly significant because it dictates the type and degree of penalty the trial court may impose. A defendant may choose not to contest a failure to report and choose to accept the relatively minor, statutorily required penalty of fifteen days incarceration for a first revocation under the (e)(1)(A) graduated sanctions matrix. However, if the trial court *sua sponte* elevates the failure to report to an absconding charge, a defendant is not on notice of the array of harsher penalties attendant to such a non-technical violation. None of the concerns in Munn regarding the State's failure to give formal written notice that the charge the Appellant was facing for violating probation was absconding are implicated here because the Appellant's offense of conviction date preceded Tennessee Code Annotated sections 40-35-311(e)(1)(A) and (g).

Upon our review, the proof at the revocation hearing established that for a period of seven months, the Appellant failed to report to his probation officer, failed to undergo monthly drug screens, and failed to report to or comply with any of the community resource programs as directed by the court. Unlike the trial court in Munn, the trial court here made extensive findings in support of its determination that the Appellant had absconded. The court detailed the Appellant's prior sanctions by community supervision "in that he tested positive for drugs" and further observed that the Appellant "was referred to Harbor House for drug treatment and left the treatment facility without successfully completing the drug treatment; that he was not reporting to his probation officer; that after being originally

- 10 -

placed on GPS monitoring, he was taken off that . . . [and] classified as homeless[.]" The Appellant did not have a permanent address and could not operate the GPS monitoring system correctly. When the Appellant was advised to come into the probation office to correct the issue with the GPS, he never came back.

The court acknowledged the probation officer's obligation to classify the Appellant's conduct as "technical" because he had not committed a new offense, however, it disagreed and determined that in "failing to cooperate in any way, shape, or form," the Appellant had absconded. The record supports the determination of the trial court. See e.g. State v. Taylor, No. M2017-01526-CCA-R3-CD, 2018 WL 1768731, at *2 (Tenn. Crim. App. Apr. 12, 2018) (affirming revocation of probation based on defendant's failure to twice report as directed and probation officer's testimony he initiated absconder proceeding after learning the defendant no longer lived at her reported address). The "primary goal of probation . . . is rehabilitation of the defendant[,]" see State v. Burdin, 924 S.W.2d 82, 86 (Tenn. 1996), which becomes impossible to do when a defendant wholly fails to comply with any of the reporting conditions of probation. In other words, a probation officer cannot supervise a probationer who refuses to report. Accordingly, we affirm the judgment of the trial court revoking the Appellant's diversionary probation and imposing a sentence of three years in confinement.

## CONCLUSION

Based upon the above reasoning and authority, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE